October 12, 1979

## 79-76 MEMORANDUM OPINION FOR THE DIRECTOR OFFICE OF MANAGEMENT AND BUDGET

### Bonneville Power Administration—Authority to Conduct Pilot Conservation Programs (16 U.S.C. §§ 832, 838)

This responds to your request for the views of this department whether the Bonneville Power Administration (BPA), an agency within the Department of Energy, would be authorized to engage in four energy-conservation pilot programs outlined in the letter to you from the Secretary of Energy dated August 10, 1979. These programs would be conducted in the fields of residential insulation, solar water heaters, irrigation pump testing, and small wind energy conversion systems.

The Department of Energy believes that the BPA has the authority to carry out those programs as long as they remain in the nature and within the dimensions of testing or pilot programs designed to determine the feasibility of full-scale implementation. The latter, the Department of Energy believes, would have to be authorized by Congress. It is our opinion that BPA is authorized to engage in and to expend funds on the programs as proposed by the Department of Energy, if the BPA Administrator considers them to be necessary.

The basic functions of the BPA are to operate and maintain the Federal electric power transmission system in the Pacific Northwest and to market the electric power generated by the Federal generating plants in that area. Act of August 20, 1937, § 2(b) 50 Stat. 732, 16 U.S.C. § 832(a) (b) (Bonneville Act); Federal Columbia River Transmission Systems Act, §§ 2(b), 8, 16 U.S.C. §§ 838, 838f, 88 Stat. 1376, 1377.

At first blush the conservation of electricity and the development of alternative sources of power may appear to have the effect of decreasing the demand for electric power and thus to be inconsistent with the statutory purposes of an entity established to transmit and market the power generated by the Federal hydroelectric installations in the Pacific Northwest. According to information furnished to us by the Department

of Energy, this would not be the effect of the conservation measures or of the development of alternative sources of energy. There is now a shortage of hydroelectric power in the Pacific Northwest, which, it is said, will last at least until 1983. Hence, not all demands for electricity can be filled from the Federal hydroelectric generating plants in the Northwest. Moreover, § 4(b) of the Bonneville Act, 16 U.S.C. § 832c(b), requires that priority be given to domestic and rural consumers. The proposed conservation of electricity by domestic and rural consumers and the development of alternative sources of power for the use of those consumers, therefore, would not lessen the overall demand for electricity. Instead, it would make more energy available for the use of nonpreference—usually industrial—customers; in other words it would be the equivalent of generating additional energy.

This effort to make the greatest use of the energy generated by the Federal hydroelectric generating facilities in the Northwest would be consistent with § 2(b) of the Bonneville Act, 16 U.S.C. § 832a(b), "to encourage the widest possible use of all electricity energy that can be generated and marketed and to provide reasonable outlets therefore," and with § 4(d) of Pub. L. No. 93–454, 16 U.S.C. § 838(b)(d), providing that the Secretary of Energy through the Bonneville Administrator shall "maintain the electrical stability and electrical reliability of the Federal system."

Moreover, § 2(f) of the Bonneville Act, 16 U.S.C. § 832a(f), confers on the BPA Administrator extremely broad powers. That section authorizes the Administrator "[s]ubject only to the provisions of this Act * * * to enter into such contracts, agreements, and arrangements * * * as he may deem necessary." It gives very wide discretion to the Administrator. The Comptroller General noted in his letters of September 21, 1951 (B-105397), to the Secretary of the Interior, and of July 19, 1979 (B-11485B), to Representative Weaver that the legislative history of that provision

> * * * indicates that its purpose was to free the Administration from the requirements and restrictions ordinarily applicable to the conduct of Government business and to enable the Administrator to conduct the business of the project with a freedom similar to that which has been conferred on public corporations carrying on similar or comparable activities. In view of such broad authority, it appears that the scope of the activities contemplated under the act and the appropriate means of accomplishing same, are matters for determination by the Administrator * * *.

However, as broad as the authority of the Administrator may be, it is circumscribed by the basic statutory functions of the EPA, i.e., to transmit and market the power generated by the Federal hydroelectric power projects in the Northwest. It is not his office to increase the amount of available power, at least not on a permanent basis. That would require congressional action.

On the other hand, § 11 of Pub. L. No. 93–454, 16 U.S.C. § 8381, which establishes a revolving fund for the BPA, permits expenditures from this fund without further appropriation for a number of purposes, including:

(3) electrical research, development, experimentation, tests, and investigation related to construction, operation, and maintenance of transmission systems and facilities; and

\* \* \* \* \* \* \*

(6) purchase of electric power (including the entitlement of electric plant capability) (i) on a short-term basis to meet temporary deficiencies in electric power which the Administrator is obligated by contract to supply \* \* \* .

We have been advised that the programs that BPA intends to undertake are in the nature of research and pilot programs designed to determine whether conservation measures, such as home insulation and irrigation pump testing, and new methods of generating energy, such as solar heaters and small wind-energy conversion systems, would be more efficient methods of filling the energy gap in the Northwest than the building of new dams or purchasing power from thermal or nuclear power plants. Moreover, BPA analogizes the saving of energy to the generation or acquisition of additional energy. Section 11(b)(6) of Pub. L. No. 93–454, 16 U.S.C. § 838i(b)(6), authorizes BPA to expend funds for that purpose on a short-term basis.

We therefore conclude that if the Administrator of BPA determines that it is necessary to engage in the four pilot programs mentioned in the letter of the Secretary of Energy, BPA would be authorized to conduct them.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*